IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| QUANG DUY VU,<br><br>    Petitioner,<br><br>    vs.<br><br>SHIKHA DOSANJ, in her official capacity as Warden of the Federal Detention Center, Honolulu, Hawaiʻi, *et al.*,<br><br>    Respondents. | Civil No. 26-00013 MWJS-RT<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

### INTRODUCTION

Petitioner Quang Duy Vu is a native and citizen of Vietnam who has been in immigration detention for over eight months. He has filed a petition for a writ of habeas corpus, arguing that his prolonged detention is not lawful under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal to Vietnam is not likely in the reasonably foreseeable future. For the reasons that follow, the court agrees and Vu's petition is GRANTED.

### BACKGROUND

Although he was born in South Vietnam in 1974, Vu came to the United States in around December 1990—when he was sixteen years old—"fle[eing] Vietnam after the Vietnam War" for "supporting South Vietnam and the United States." Dkt. No. 1, at

PageID.3, 19.  He eventually was granted "indefinite public interest parole."  Dkt. No. 12-1, at PageID.88.

His settlement in the United States was not initially smooth.  While in his twenties, Vu was convicted of grand theft, receiving known stolen property, burglary, forgery, and solicitation to commit specified acts, all in California state court.  Dkt. No. 12, at PageID.72.  Those criminal legal troubles did not continue into older age, and for the last quarter century, Vu—who is now months shy of fifty-two—has not been convicted of any further crimes.  Dkt. No. 1, at PageID.4, 6.  Indeed, he has had success here in Hawaiʻi:  as Vu reports, he is "lawfully employed in the restaurant business as the owner and operator of Saito and Pho Restaurant in Honolulu with four (4) locations."  *Id.* at PageID.6.

But while Vu has become a law-abiding member of the community, his legal troubles have continued in at least one respect:  he has lost his indefinite public interest parole and thus does not have legal permission to remain in the United States.  In August 1999—as a result of his conviction for receipt of known stolen property—the Immigration and Naturalization Services ("INS") charged Vu as inadmissible owing to his convictions for acts constituting the essential elements of a crime involving moral turpitude.  Dkt. No. 12-1, at PageID.88.  Vu was arrested by INS on the inadmissibility charge in October 1999 and detained.  *Id.*  His asylum claim was denied and he was ordered removed to Vietnam in March 2000.  *Id.*

Vu was not, however, removed from the United States. Instead, in around June 2000, he was released from INS custody under an order of supervision because INS determined that it could not obtain a travel document for him to return to Vietnam. *Id.* In November 2008, Vu failed to report to the federal agency now charged with handling immigration matters—U.S. Immigration and Customs Enforcement ("ICE")—and he was deemed an absconder. *Id.* at PageID.89. But when he was eventually arrested in January 2014, he was released the same day with a new order of supervision. *Id.*

Vu remained at liberty in the United States until June 12, 2025, when ICE "re-detained [Vu] to execute his removal order to Vietnam." *Id.* Vu has not been removed, though. Instead, for the more than eight months since his arrest, he has been in custody at the Federal Detention Center in Honolulu, Hawaiʻi (the "FDC"). To effectuate his removal, ICE "must acquire a travel document and schedule a flight" for Vu. *Id.* But to date, ICE has done neither. *Id.* at PageID.89-90.

Against this backdrop, Vu filed his habeas petition on January 14, 2026, in which he names the warden of the FDC, Shikha Dosanj, as well as three other government officials. Dkt. Nos. 1, 7. For reasons that remain unclear, the petition was not expeditiously served, and counsel for respondents did not notice an appearance until February 4, 2026. Dkt. No. 10; *see also* Dkt. No. 6 (minutes of Jan. 21, 2026, status conference in which court inquired into status of service). On February 5, 2026, the court held a status conference at which the parties jointly waived the timing

3

requirements of 28 U.S.C. § 2243 and proposed a briefing schedule under which the government would respond to the petition on February 17, 2026, and Vu would reply by February 24, 2026.  Dkt. No. 11.  The court accepted the proposal and the parties timely filed their briefs.  Dkt. Nos. 12, 13.  The parties then asked the court to resolve the petition without holding any further hearing.  Dkt. No. 15.

## DISCUSSION

The great writ of habeas corpus safeguards the right of individuals in custody—citizens and noncitizens alike—to test the legality of their detention under "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Vu is in immigration custody at the FDC and argues that his prolonged detention violates federal law; the court unquestionably has jurisdiction over his petition.  *See Zadvydas*, 533 U.S. at 688.

We turn, then, to the merits of Vu's petition.  As Vu recognizes, because he has been arrested to effectuate an order of removal, a 90-day "removal period" applies, under which he may lawfully be detained.  8 U.S.C. §§ 1231(a)(1) and (a)(2).  That period may be extended beyond the 90 days under 8 U.S.C. § 1231(a)(6), and the language of the provision places no express limit on the length of further extensions.  But in *Zadvydas*, the Supreme Court rejected the notion that § 1231(a)(6) allows "indefinite detention."  533 U.S. at 689.  Instead, adopting a limiting construction, the Court held that § 1231(a)(6) allows detention of a noncitizen currently in the United

4

States only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id*.  It follows that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The *Zadvydas* Court also provided guidance on how to apply this limiting construction of the statute.  A detention period of six months after a removal order is to be treated as "presumptively reasonable." *Id.* at 701.  On the other side of six months, however, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," then the government "must respond with evidence sufficient to rebut that showing." *Id.*  The court must evaluate each party's burden flexibly and with sensitivity to the individualized circumstances of a case.  This means that, on the one hand, the noncitizen need not show "that deportation will prove 'impossible'"; that is, he need not show "the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Id.* at 702 (citation omitted).  It also means that, on the other hand, the government might still meet its burden of rebuttal even if there is no "'extant or pending' repatriation agreement," as the court must also consider "the likelihood of successful future negotiations." *Id.* (citation omitted).

Applying the Supreme Court's guidance here, the court concludes that Vu has met his burden.  After he was initially arrested by INS in October 1999 and an order of

5

removal was entered against him, Vu was not removed from the United States; instead, he was released under an order of supervision because INS could not obtain a travel document for his return to Vietnam. The same thing happened in January 2014 after Vu was arrested for failing to report to ICE. And Vu offers a persuasive explanation for why this has happened in the past: "Vietnam has historically been reluctant to accept deportees, particularly individuals with criminal records." Dkt. No. 1, at PageID.2. What is more, Vu "entered the U.S. in 1990, placing him among Vietnamese nationals whose repatriation has long been constrained under the U.S.-Vietnam repatriation framework." *Id.* These amount to at least "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. And notably, in the face of comparable arguments from other similarly situated Vietnamese nationals, other federal district courts have likewise found that petitioners had met their burdens of proof. *See, e.g., Truong v. Bondi*, Case No. SA-25-CA-01947, 2026 WL 475296, at *4 (W.D. Tex. Feb. 11, 2026); *Pham v. Scott*, Case. No. 2:26-cv-00027, 2026 WL 238994, at *4-5 (W.D. Wash. Jan. 29, 2026); *Dao v. Bondi*, Case No. 2:25-cv-02340, 2026 WL 18626, at *4 (W.D. Wash. Jan. 2, 2026); *Abubaka v. Bondi*, Case No. C25-1889, 2025 WL 3204369, at *4 (W.D. Wash. Nov. 17, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721-23 (W.D. Wash. 2025).

      That leaves the question of whether the government has offered sufficient evidence to rebut Vu's showing. Because the government is "not seeking" to remove

Vu "to a third country," Dkt. No. 12-1, at PageID.89, the question is whether the government's rebuttal evidence shows a "significant likelihood of removal" to Vietnam "in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  The government's evidence on that issue amounts to eight paragraphs in a single ICE agent's declaration.  Dkt. No. 12-1, at PageID.89-90.  In those paragraphs, the agent affirms that ICE "has worked expeditiously to effectuate" Vu's removal to Vietnam and these "removal efforts remain ongoing."  *Id.* at PageID.89.  The agent represents that ICE's Enforcement and Removal Operations ("ERO") "has submitted a travel document request packet to ERO Removal and International Operations ('RIO') to obtain a travel document to effectuate [Vu's] removal to Vietnam."  *Id.*  And the agent further represents that RIO "has been actively engaging the Government of Vietnam in pursuit of a travel document for Mr. Vu."  *Id.* at PageID.89-90.

This evidence shows a possibility that Vu will be repatriated—perhaps even a possibility that he will be repatriated soon.  But the question is not whether there is "*any* prospect of removal—no matter how unlikely or foreseeable."  *Zadvydas*, 533 U.S. at 702.  The question is whether there is a "significant likelihood" of that happening in the "reasonably foreseeable future."  *Id.* at 701.  The agent's declaration does not make that more particularized showing.

To be sure, the agent's declaration also offers more generalized assertions about the government's recent success in repatriating Vietnamese citizens.  The agent attests

7

that "ICE routinely obtains travel documents for Vietnamese citizens, including those who immigrated to the United States before 1995." Dkt. No. 12-1, at PageID.90. The agent further attests that "ICE routinely has flights to Vietnam, and ICE has removed several Vietnamese citizens to Vietnam as recently as November 2025," and that in fiscal year 2025, "ICE has removed at least 587 Vietnamese citizens to Vietnam." *Id.* But these assertions do not materially strengthen the government's showing. The fundamental flaw is that they do not offer any indication of what *percentage* of the government's requests are successful, or what *percentage* of the total number of attempted removals the 587 successful ones represent. If, for example, the government routinely gets travel documents for 10 Vietnamese citizens each month after asking for 100, that ten percent success rate would not support the inference that travel documents are substantially likely to arrive soon for Vu. In other words, it is the field goal percentage, not just the total number of shots made, that matters here. And nothing in the agent's declaration answers that critical question.

Other courts have noted the same statistical deficiency in the government's rebuttal evidence. In *Dao*, for example, the district court in the Western District of Washington observed that while the government had asserted that "at least 569 final order Vietnamese citizens" received travel documents as of September 11, 2025, the government had offered "no indication of the total number of detainees involved, or how many individuals were *not* removed despite Respondents' requests that Vietnam

8

issue travel documents." 2026 WL 18626, at *5. And in *Nguyen v. Hyde*, the district court in the District of Massachusetts observed: "If DHS submitted 350 requests and Vietnam issued travel documents for 328 individuals, Respondents may very well have shown that removal is significantly likely in the reasonably foreseeable future. On the other hand, if DHS submitted 3,500 requests and only 328 individuals received travel documents, Respondents would not be able to meet their burden." 788 F. Supp. 3d 144, 151 (D. Mass. 2025). As in those cases, the government's rebuttal evidence does not offer any clarification of its statistical success with Vietnam, and so falls short of meeting the government's burden.

And that means Vu's continued detention is unlawful under § 1231(a)(6). The court therefore will grant Vu's habeas petition and order his immediate release. But it does so with three qualifications. First, in addition to arguing that his continued detention is unlawful under § 1231(a)(6), Vu makes other arguments in support of his petition. *See* Dkt. No. 1, at PageID.35-36 (raising additional claims under the Administrative Procedure Act and the Constitution). Because they are not sufficiently fleshed out in his briefing, the court declines to resolve those other arguments. Second, because the court agrees that there is no reason to apply this order to any respondent other than the warden of the FDC—at the least, Vu has not offered any argument to the contrary—it GRANTS Respondents' motion "to strike and to dismiss all respondents other than Shikha Dosanj from this case." Dkt. No. 12, at PageID.71 n.1. Third, the

9

court DENIES as moot Vu's motion to amend or correct his petition to delete certain passages that are inaccurate, Dkt. No. 14, as those passages have no bearing on the court's ruling here.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is GRANTED. The court ORDERS Respondent Shikha Dosanj, the Warden of the FDC, to immediately release Vu from detention under the conditions in his preexisting order of supervision. The parties are ORDERED to file a joint status report by March 6, 2026, confirming that Vu has been released. And any fee petition must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (explaining that the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

IT IS SO ORDERED.

DATED: March 3, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge